734 So.2d 826 (1999)
STATE of Louisiana
v.
Roger R. SMITH and Oscar L. Frith.
No. 97-KA-2221.
Court of Appeal of Louisiana, Fourth Circuit.
April 7, 1999.
*828 Harry F. Connick, District Attorney, Joseph E. Lucore, Assistant District Attorney, Orleans Parish, New Orleans, Louisiana, Counsel for Plaintiff/Appellee.
Dwight Doskey, Orleans Indigent Defender Program, New Orleans, Louisiana, Counsel for Defendant/Appellant Roger R. Smith.
Peggy J. Sullivan, Louisiana Appellate Project, West Monroe, Louisiana, Counsel for Defendant/Appellant Oscar Frith.
Court composed of Judge WILLIAM H. BYRNES III, Judge DENNIS R. BAGNERIS Sr., Judge Pro Tempore PHILIP C. CIACCIO.
PHILIP C. CIACCIO, Judge Pro Tem.

I. STATEMENT OF THE CASE

On October 18, 1996, defendants, Roger Smith and Oscar Frith, were charged by bill of information with distribution of crack cocaine in violation of La. R.S. 40:967. At their arraignment on October 22, 1996, the defendants entered pleas of not guilty. A jury trial was held on January 16, 1997. Defendant Roger Smith was found guilty as charged. Defendant Oscar Frith was found guilty of attempted distribution of crack cocaine. The state filed multiple bills of information alleging defendant Smith was a third felony offender and defendant Frith was a second felony offender. Multiple bill and sentencing hearings were held on February 28, 1997. Defendant Frith was adjudicated a second felony offender. The defendant waived delays and was sentenced to serve seven and one half years at hard labor. Defendant Smith was adjudicated a third felony offender, waived all delays and was sentenced to life imprisonment at hard labor without benefit of probation, parole or suspension of sentence.
Defendant Smith filed motions for reconsideration of sentence and for appeal. The trial court denied Smith's motion for reconsideration of sentence. The trial *829 court granted Smith's motion for appeal and set a return date of May 1, 1997.
Defendant Frith was granted an out of time appeal on July 10, 1997. In addition to the briefs supplied by their counsels, pro se briefs by both Smith and Frith have been filed, alleging error on the part of the trial court.

II. STATEMENT OF THE FACTS

New Orleans Police Officer Tremaine Johnson was involved in an undercover narcotics investigation in September of 1996. Johnson was the spotter for Othello Thomas, the undercover agent. He was also equipped with audio equipment to monitor the conversations of the undercover agent. On September 12, 1996, Officer Thomas was approached by defendant Frith at the corner of Freret Street and Martin Luther King Boulevard. Thomas asked Frith where could he get a "twenty." Frith offered to get the cocaine for Thomas. Frith went to one location. However, the subject would not sell to Frith. The subject wanted Thomas to come to him. However, for safety reasons, Thomas refused. Frith then directed Thomas to the corner of Josephine and LaSalle streets. Frith got into the bed of Thomas's truck, and told Thomas in which direction to drive. When they got to the intersection of Josephine and LaSalle, Frith got out of the truck, walked across the street and met with defendant Smith. Frith returned to the truck while Smith met with another subject in an alleyway. Smith then approached Thomas' truck and sold Thomas a rock of crack cocaine. Frith got back in to the bed of the truck and he and Thomas left the area. Smith walked across the street and went into the grocery store. When Smith went into the store, Johnson directed the take down unit to execute an arrest. Johnson provided the officers with a description of Smith. The take down unit arrested Smith in the grocery store.
Officer David Duplantier was a member of the take down team. After Duplantier and his partner were advised that the deal had been consummated and provided a description of the seller, they went into the grocery store and arrested Smith.
Officer John Fitzpatrick was also involved in the undercover narcotics investigation. Officer Fitzpatrick had a radio receiver in his vehicle and was able to hear Thomas' conversations. Fitzpatrick overheard Thomas' conversation with Frith. Frith offered to get some crack cocaine for Thomas. After a short while, Frith came back. He was unable to get the cocaine for Thomas. Frith told Thomas he would show Thomas where Thomas could get some cocaine if Frith could get in the truck. Frith got into the bed of Thomas' truck and gave Thomas directions. Thomas was able to make a purchase at the second location. After the deal was made and Frith was in the bed of the truck, Fitzpatrick followed Thomas. When Thomas stopped the truck, Frith jumped out and asked Thomas for either money or cocaine in return for his help. Thomas said no. The conversation became heated. Officer Fitzpatrick then effected a take down of Frith and Thomas. When Fitzpatrick approached Thomas' truck, Frith was standing next to the vehicle. Fitzpatrick and his partner exited their vehicle and told Frith to put his hands on the car. At that point, Thomas drove off. Fitzpatrick told his partner to stop the truck. Fitzpatrick identified defendant Frith at trial.
Officer Othello Thomas, the undercover narcotics agent, made eye contact with defendant Frith as Thomas approached the intersection of Martin Luther King Boulevard and Freret Street. Thomas pulled his vehicle over and asked Frith if Frith knew where Thomas could get a "twenty." Frith stated that he could get the drugs across the street. Frith asked Thomas to go with him. Thomas declined and stated that he would wait for Frith in the vehicle. Frith told Thomas that he had to go to the Melpomene Housing Development. When Frith returned, Frith explained to Thomas that the seller did not want to give the narcotics to Frith. *830 The seller did not trust Frith with the drugs. Frith then went into a house in the next block. He returned and informed Thomas that the dealers in that house did not have any more drugs. Frith offered to take Thomas to Gerttown but Thomas said that was too far. Frith then directed Thomas to the intersection of Josephine and LaSalle Streets. When Frith and Thomas arrived at the intersection, defendant Smith was standing on a corner with a guy who was wearing a scarf around his neck. Frith went to speak with Smith. Smith then approached the truck and asked Thomas what he wanted. Thomas stated he was looking for a "twenty." Smith walked across the street and into an alley. When Smith returned to Thomas' vehicle, Smith sold Thomas a rock of crack cocaine for twenty dollars. Smith obtained the rock of crack cocaine from someone in the alley. Thomas had been wearing a radio transmitter during the incident. His vehicle also contained a video camera. The videotape of the incident was played to the jury.
The parties stipulated that Officer William Giblin of the New Orleans Police Department Crime Lab would testify that the substances obtained by Officer Thomas from defendant Smith testified positive for crack cocaine.
Defendant, Oscar Frith, testified that at 3:00 p.m. on September 12, 1996, he was standing on the corner of Martin Luther King Boulevard and Freret drinking beer with a friend, Kiante. The defendant denied making eye contact with Thomas. He claimed that he did not use or sell drugs. The defendant stated he approached Thomas' vehicle because he thought Thomas was asking directions. Frith assisted Thomas because Thomas asked for Frith's help. Frith admitted to a prior conviction for theft of items valued between one hundred dollars and five hundred dollars in May of 1994, as well as to having a drinking problem. Frith claimed that he asked Thomas for some money to buy beer. Frith denied meeting and/or knowing Smith. According to Frith, Fitzpatrick told Frith he was being arrested for angering a police officer. Frith denied engaging in the sale of narcotics to Thomas on September 12, 1996.

III. DISCUSSION

A. Errors Patent and Smith's Pro Se Assignment of Error No.8

A review of the record for errors patent reveals none.

B. Smith's Pro Se Assignment of Error No.1

In Smith's first pro se assignment of error, the defendant claims that the jurors did not comply with the law as instructed. He complains that had the jury applied the law as instructed by the trial court, the jury would have found the defendant innocent. The defendant contends that the evidence presented by the state was not sufficient to support the jury's findings.
When assessing the sufficiency of evidence to support a conviction, the appellate court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found proof beyond a reasonable doubt of each of the essential elements of the crime charged. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Jacobs, 504 So.2d 817 (La. 1987).
In addition, when circumstantial evidence forms the basis of the conviction, such evidence must consist of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. State v. Shapiro, 431 So.2d 372 (La.1982). The elements must be proven such that every reasonable hypothesis of innocence is excluded. La. R.S. 15:438. La. R.S. 15:438 is not a separate test from Jackson v. Virginia, supra, but rather is an evidentiary guideline to facilitate appellate review of whether a rational juror could have found a defendant guilty beyond a reasonable doubt. *831 State v. Wright, 445 So.2d 1198 (La.1984). All evidence, direct and circumstantial, must meet the Jackson reasonable doubt standard. State v. Jacobs, supra.
Smith was convicted of distribution of cocaine. La. R.S. 40:967 provides that it is shall be unlawful for any person "knowingly or intentionally ... [t]o ... distribute, or dispense, a controlled dangerous substance classified in Schedule II." Cocaine and its derivatives are listed in Schedule II. La. R.S. 40:964. A defendant is guilty of distribution of cocaine when he transfers possession or control of cocaine to his intended recipients. State v. Cummings, 95-1377 (La.2/28/96), 668 So.2d 1132; see La. R.S. 40:961(14). The state must show (1) "delivery" or "physical transfer;" (2) guilty knowledge of the controlled dangerous substance at the time of transfer; and (3) the exact identity of the controlled dangerous substance. State v. Miller, 587 So.2d 125, 127 (La.App. 2d Cir.1991).
In the case at bar, Officer Thomas testified that defendant Smith gave him a rock of crack cocaine and he gave Smith a twenty-dollar bill for the crack. The parties stipulated that the object that Thomas purchased from Smith was positive for cocaine. The other officers who were observing the transaction corroborated Officer Thomas' testimony. Thus, the state produced sufficient evidence to establish that the defendant distributed cocaine to Officer Thomas.
This assignment of error is without merit.

C. Smith's Pro Se Assignment of Error No.2 and Frith's Pro Se Assignment of Error No.3

In these assignments, the defendants assert that they proved the defense of entrapment. The defendants allege that the Officer Thomas entrapped or enticed them to sell him cocaine.
The Louisiana Supreme Court, in State v. Brand, 520 So.2d 114, 117 (La. 1988) stated that "entrapment" is an affirmative defense which arises when a law enforcement official originates the idea of the crime and then induces another person to engage in conduct constituting the crime, when the other person is not otherwise disposed to do so. The defendant claiming entrapment must prove the defense by a preponderance of the evidence, and present exculpatory evidence that defeats culpability despite the fact that the State proved all essential elements of the crime. See State v. St. Amant, 584 So.2d 724 (La.App. 4th Cir.1991); State v. Byrd, 568 So.2d 554 (La.1990).
It is important to note that the issue of entrapment focuses not only on a defendant's predisposition to commit the crime, but on the conduct of the police as well. State v. Richards, 426 So.2d 1314 (La.1982); State v. Batiste, 363 So.2d 639 (La.1978). Certainly, the defense of entrapment is designed to deter police from planting ideas in innocent minds so as to promote crimes which would not otherwise be committed. See State v. Brand, supra.
Regarding claims of entrapment, the Fourth Circuit, in State v. St. Amant, supra, explained that the relevant inquiry to be made on appeal is:
whether any rational trier of fact, viewing the evidence in a light most favorable to the prosecution, could conclude that the defendant did not prove that he was entrapped by a preponderance of the evidence.
584 So.2d at 726.
In the present case, the defendants did not produce any evidence in support of their arguments that they were entrapped by the police officers. The testimony of the police officers revealed that Frith approached Officer Thomas and asked Thomas what he was wanted. When Thomas stated he was looking for a "twenty," Frith went looking for someone who was selling cocaine. Frith found Smith who was willing to sell Officer Thomas a rock of crack *832 cocaine. There was no inducement by the police officer. Smith willingly offered to sell the officer the cocaine.
This assignment is without merit.

D. Smith's Pro Se Assignment of Error No.3

Smith also argues that there was an unreasonable delay in the perfection of the defendant's appeal. Smith contends that at the time he filed his pro se appellate brief, his appellate counsel had failed to file an appeal on his behalf. Smith's assertions are without merit. The appeal record was lodged in this Court on October 6, 1997. Smith's appellate counsel filed a brief on the defendant's brief on September 1, 1998. The defendant filed his pro se brief on September 14, 1998.
This assignment is without merit.

E. Smith's Pro Se Assignment of Error No.4

In this assignment, the defendant contends that the State used "deleted, false and fabricated" evidence to obtain a conviction against the defendant. The defendant argues that the videotape and audiotape introduced at trial provided evidence that was contradictory to the Officer Thomas' testimony. Specifically, the defendant contends that Officer Thomas failed to testify that defendant Smith was wearing a beeper at the time of the alleged transaction and that the beeper went off while Smith was talking to the officer. According to Smith, the videotape and audiotape would show that the defendant was wearing a beeper.
A review of the videotape reveals that Smith was wearing a beeper. However, such evidence is not in conflict with the officer's testimony. The officer did not state whether the defendant was wearing a beeper. Further, the defendant has not shown how the beeper is relevant to this present case. In addition, the jury viewed the videotape and heard the audiotape as well as the officer's testimony. Thus, the jury was able to view any alleged conflict between the officer's testimony and the videotape.
This assignment is without merit.

F. Smith's Pro Se Assignment of Error No.5

Smith further argues that the police officers did not have probable cause to arrest him.
Probable cause to arrest without a warrant exists when the circumstances known to the officer justify a person of ordinary caution in believing the person to be arrested has committed a crime. State v. Raheem, 464 So.2d 293 (La.1985); State v. Zayas, 93-1473 (La.App. 4 Cir. 5/26/94), 637 So.2d 1237. In the present case, Officer Thomas testified that defendant Smith sold him crack cocaine. The transaction was overheard by at least two other police officers. Thus, the officers had probable cause to arrest defendant Smith for distribution of cocaine.
This assignment is without merit.

G. Smith's Pro Se Assignment of Error No.6

The defendant contends that the trial court erroneously stated that a life sentence was mandatory under the multiple offender statute.
La. R.S. 15:529.1 provides that
[I]f the third felony or either of the two prior felonies is a felony defined as a crime of violence under R.S. 14:2(13) or as a violation of the Uniform Controlled Dangerous Substances Law punishable by imprisonment by more than five years or any other crime punishable for more than twelve years, the person shall be imprisoned for the remainder of his natural life, without benefit of parole, probation, or suspension of sentence.
In the case at bar, defendant Smith was convicted of distribution of cocaine, a violation of the Uniform Controlled Dangerous Substances Law. The minimum sentence *833 for that offense is five years at hard labor. La. R.S. 40:967. Smith's two prior convictions were for purse snatching and simple burglary. Thus, the defendant, a third felony offender, was mandated by statute to life imprisonment as a result of his conviction for distribution of cocaine. The trial court did not err when it stated that the multiple offender statute required defendant to be sentenced to life imprisonment.
This assignment is without merit.

H. Smith's Pro Se Assignment of Error No.7, Smith's Counsel's Assignment of Error No.1, Frith's Pro Se Assignment of Error No.1 and Frith's Counsel's Assignment of Error No.2

In these assignments, Smith contends that the multiple offender statute is unconstitutional in mandating a minimum of a life sentence for third felony offenders. In the alternative, the defendant argues that the life sentence imposed by the trial court was excessive. Defendant Frith also complains that the sentence imposed by the trial court was unconstitutionally excessive.
La. R.S. 15:529.1 has passed constitutional muster since its enactment despite a variety of attacks. State v. Dorthey, 623 So.2d 1276 (La.1993). In Dorthey, the Louisiana Supreme Court considered whether the statute was unconstitutional as it related to Louisiana's constitutional separation of powers clause. In concluding that the statute was constitutional, the Court noted:
In addressing the contention we note that the district attorney indeed has the discretionary power to bring habitual offender bills of information just as he has the initial unlimited power to prosecute "whom, when and how" he chooses. Admittedly, the minimum and maximum penalties available for a given repeat criminal offender is influenced in part by the district attorney's exercise of discretion. But the discretion given the district attorney in this regard by the Legislature is no more intrusive than the Legislature's prescription of minimum and maximum penalties, or the constitutional grant of powers and discretion to the district attorney.
623 So.2d at 1279.
The determination and definition of acts which are punishable as crimes is a purely legislative function. State v. Taylor, 479 So.2d 339 (La.1985); La. R.S. 14:7. It is the Legislature's prerogative to determine the length of the sentences imposed for crimes committed as felonies. State v. Prestridge, 399 So.2d 564 (La. 1981). The determination that third felony offenders who have been convicted of a crime of violence or a narcotics crime which has a minimum sentence of five years should be sentenced to a mandatory life imprisonment was within the Legislature's constitutional prerogative to set the length of sentences for felonies.
The Louisiana Supreme Court recognized in Dorthey that a minimum or mandatory sentence under the multiple offender statute might be constitutionally excessive in light of the circumstances of a particular case. The Court announced in Dorthey that a court may impose a lesser sentence if the court determines that the mandatory or minimum sentence is excessive in light of the particular circumstances of the case before it.
Article 1, Section 20 of the Louisiana Constitution of 1974 provides that "No law shall subject any person ... to cruel, excessive or unusual punishment." A sentence within the statutory limit is constitutionally excessive if it is "grossly out of proportion to the severity of the crime" or is "nothing more than the purposeless imposition of pain and suffering." State v. Caston, 477 So.2d 868 (La.App. 4th Cir.1985). Generally, a reviewing court must determine whether the trial judge adequately complied with the sentencing guidelines set forth in LSA C.Cr.P. art. 894.1 and whether the sentence is warranted *834 in light of the particular circumstances of the case State v. Soco, 441 So.2d 719 (La.1983); State v. Quebedeaux, 424 So.2d 1009 (La.1982).
If adequate compliance with Article 894.1 is found, the reviewing court must determine whether the sentence imposed is too severe in light of the particular defendant and the circumstances of his case, keeping in mind that maximum sentences should be reserved for the most egregious violators of the offense so charged. State v. Quebedeaux, supra; State v. Guajardo, 428 So.2d 468 (La.1983).
In the present case, defendant Smith was adjudicated a third felony offender and sentenced to life imprisonment as required by the multiple offender statute. Defendant Smith argues that the sentence is excessive and the trial court should have applied State v. Dorthey to impose a lesser sentence. Defendant Smith was convicted of distribution of cocaine in the present case. He has prior convictions for purse snatching in 1990 and simple burglary in 1991. In sentencing the defendant, the trial court noted that the defendant's convictions were serious offenses and fit within the statutory requirements for the imposition of life imprisonment at hard labor without benefit of probation, parole or suspension of sentence. The imposition of life imprisonment was not excessive in light of the defendant's prior criminal history and his present conviction for distribution of cocaine.
Defendant Frith claims that the sentence of seven and one half years at hard labor for his conviction of attempted distribution of cocaine is unconstitutionally excessive. The defendant had a prior conviction for theft over one hundred dollars. Under the multiple offender statute, the minimum sentence defendant could receive as a second felony offender was seven and one half years at hard labor. See La. R.S. 14:27; La. R.S. 40:967; La. R.S. 15:529.1. Thus, the defendant received the minimum sentence allowable under the multiple offender statute. Defendant also suggests that the trial court should have used State v. Dorthey to impose a lesser sentence. There is nothing in the record which suggests that the sentence imposed is excessive. Frith was convicted of attempted distribution of cocaine. He has one prior felony conviction for theft of items valued between one hundred and five hundred dollars in 1994. He was on probation when the present offense was committed.
These assignments are without merit.

I. Frith's Pro Se Assignment of Error No.2

Frith further suggests that the sentence imposed under the multiple offender statute constituted a double bill. However, the defendant does not indicate how the sentence imposed is a double bill.
An adjudication under the multiple offender statute is not a separate conviction but simply an enhancement of the penalty imposed for the original conviction. State v. Dorthey, supra.
This assignment is without merit.

J. Frith's Pro Se Assignment of Error No.4

Frith also alleges that he received ineffective assistance of counsel at the multiple bill hearing. Specifically, Frith complains that his trial counsel was ineffective in advising defendant to accept a sentence of fifteen years on the multiple offender adjudication.
Generally, the issue of ineffective assistance of counsel is a matter more properly addressed in an application for post conviction relief, filed in the trial court where a full evidentiary hearing can be conducted. State v. Prudholm, 446 So.2d 729 (La.1984); State v. Johnson, 557 So.2d 1030 (La.App. 4th Cir.1990); State v. Reed, 483 So.2d 1278 (La.App. 4th Cir. 1986). Only if the record discloses sufficient evidence to rule on the merits of the claim do the interests of judicial economy justify consideration of the issues on appeal. *835 State v. Seiss, 428 So.2d 444 (La. 1983); State v. Ratcliff, 416 So.2d 528 (La. 1982); State v. Garland, 482 So.2d 133 (La.App. 4th Cir.1986); State v. Landry, 499 So.2d 1320 (La.App. 4th Cir.1986).
The defendant's claim of ineffective assistance of counsel is to be assessed by the two part test of Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); State v. Fuller, 454 So.2d 119 (La.1984). The defendant must show that counsel's performance was deficient and that the deficiency prejudiced the defendant. Counsel's performance is ineffective when it can be shown that he made errors so serious that counsel was not functioning as the "counsel" guaranteed to the defendant by the Sixth Amendment. Strickland, supra, 466 U.S. at 686, 104 S.Ct. at 2064. Counsel's deficient performance will have prejudiced the defendant if he shows that the errors were so serious as to deprive him of a fair trial. To carry his burden, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, supra, 466 U.S. at 693, 104 S.Ct. at 2068. The defendant must make both showings to prove that counsel was so ineffective as to require reversal. State v. Sparrow, 612 So.2d 191 (La.App. 4th Cir. 1992).
A review of the transcript of the multiple bill hearing reveals that defendant Frith did not plead guilty to the multiple bill or accept a sentence of fifteen years at hard labor. The State produced the testimony of Officer Glen Burmaster and the certified documents concerning defendant's prior conviction to prove that the defendant was a second felony offender. After adjudicating the defendant to be a second felony offender, the trial court sentenced the defendant to seven and one half years at hard labor. The defendant's allegations are not supported by the record.
This assignment is without merit.

K. Frith's Counsel's Assignment of Error No.1

In this assignment, defendant Frith complains that the trial court erroneously denied his request for a jury instruction on entrapment. La.C.Cr.P. article 807 provides that "[a] requested special charge shall be given by the court if it does not require qualification, limitation, or explanation, and if it is wholly correct and pertinent. It need not be given if it is included in the general charge or in another special charge to be given." A review of the instructions given by the trial judge to the jury reveals that the trial judge included an instruction on entrapment in his charge to the jury. The instruction given by the trial judge was substantially similar to the one requested by the defendant. Thus, the trial court did not err when it denied the defendant's requested charge on entrapment.
This assignment is without merit.
For the reasons given above, defendants' convictions and sentences are hereby affirmed.
AFFIRMED.