J^EDWIN A. LOMBARD, Judge.
STATEMENT OF THE CASE
On January 7, 2002 the State filed a bill of information that charged the defendant-appellant, Carlos Smith, with five offenses. In count one he was charged with armed robbery, a violation of La. R.S. 14:64. In counts two and three he was charged with the attempted first degree murder of police officers Bruce Adams and Henry Himes, violations of La. R.S. 14:27(30). In count four he was charged with violating La. R.S. 14:69, possession of a stolen automobile; however, that charge was later amended to unauthorized use of a motor vehicle, a violation of La. R.S. 14:68.4. In the final count he was charged with possession of cocaine, a violation of La. R.S. *548 éO^?.[1] The defendant was arraigned and entered not guilty pleas to all counts on January 10, 2002. A pretrial motion to suppress hearing was held on June 11, 2002, and on July 9, 2002 the trial court denied the defendant’s motion to suppress his confession. The defendant’s trial commenced on May 6, 2002 on all but the first count. On the second day of trial, held on May 8, 2002, the twelve-person jury returned a responsive verdict of guilty of attempted manslaughter as to count two, the attempted murder of Officer Adams, a verdict of [2not guilty on count three, the attempted murder of Officer Himes, guilty as charged on count four, the unauthorized use of a motor vehicle, and not guilty as to count five, possession of cocaine.
On June 3, 2003 the defendant withdrew his former plea of not guilty as to the first count, armed robbery, and entered a plea of guilty as charged. The court sentenced him to fifteen years at hard labor without the benefit of probation, parole, or suspension of sentence on count one. The court then sentenced the defendant to fifteen years on count two and ten years on count four; all sentences were ordered to run concurrently. The defendant’s counsel immediately filed, and was granted, a motion for an appeal.
RELEVANT FACTS[2]
On November 8, 2001 Sergeant Henry Hines was a narcotics commander in the Fourth-District. While in his office at the station, he heard a broadcast describing a vehicle wanted in a crime. Fourth District officers left the station to look for the wanted vehicle, a Dodge Neon. Sergeant Hines, who was attired in plainclothes- and using an unmarked ear, drove to an area of possible escape routes where he suspected that the vehicle might be headed. The sergeant located a Dodge Neon matching the description of the wanted vehicle in the parking lot of the Woodlands Apartments. He set up surveillance in his unmarked car, notified the other officers that he might have located the wanted car, and requested that the officers proceed toward his location. As he watched, three men, later identified as |sthe defendants Mark Johnson, Antoche Wix, and Carlos Smith, came out of one of the apartments and walked to the vehicle. The sergeant radioed to the other officers as the vehicle drove out of the apartment complex and advised them of the direction of the vehicle. Two of the other Fourth District units attempted to stop the vehicle, which sped up and went into the parking area of another apartment complex where it quickly hit a dead end. As the officers converged from behind, the driver, Mark Johnson, and one of the passengers, defendant-appellant Carlos Smith, exited the vehicle and tried to flee. The third man, Antoche Wix, stayed in the vehicle and was apprehended.
*549 Lt. Bruce Adams pursued Smith on foot. The defendant and Adams ran right in front of Sergeant Hines’ vehicle. At first, Sergeant Hines was not concerned with assisting Lt. Adams because he appeared able to catch the defendant, and so the sergeant went to assist another officer. However, the sergeant heard a shot that sounded like it came from a gun with a larger caliber than a police-issue gun. The sergeant immediately radioed in that an officer needed assistance and went to help Lt. Adams. As Sergeant Hines ran around the building he saw the defendant shooting at Lt. Adams. Lt. Adams fell to the ground, and Sergeant Hines thought he had been shot. The sergeant, who was attired in plain clothes, drew his weapon and fired several rounds at the defendant. The defendant continued to run while firing back in the direction of the police officers. While Sergeant Hines took cover behind a mound of construction debris and tried to draw the defendant’s fire, Lt. Adams got up and began firing at the defendant. At some point the defendant’s gun jammed; he cleared that jam, but fell on the ground as he ran into a ditch. When his weapon jammed again, he removed the magazine in an attempt to clear it. This action gave Lt. Adams time [4to reach the defendant and kick his weapon out of his reach. The defendant was then arrested.
After the defendant was apprehended and walked back to the parking area where the vehicle had been abandoned, he was turned over to Detective Ronald Ruiz who was one of the police officers who had responded to Sergeant Hines’ call that the officers needed assistance. He read the defendant his rights from a card and searched him thoroughly. A syringe containing a liquid residue and a clear plastic bag, which appeared to contain cocaine, were found.
Officer Shawn Ferguson testified at trial that he was one of the officers involved in the initial pursuit of the wanted vehicle. He and his partner, Shawn Carter, pursued the vehicle into a parking lot at which point it was trapped. Officer Ferguson chased the driver, Mark Johnson, on foot when he ran from the vehicle and was able to apprehend him about one-half block away. Officer Ferguson stayed with Johnson when the shooting began. When it was over, Officer Ferguson inspected the wanted vehicle. He observed that the ignition system had been defeated, allowing the car to be started without a key. At that point he ran the license plate and discovered that the vehicle had been reported stolen.
Natasha Lenard testified that she was the owner of a reddish-orange Dodge Neon that was stolen and later recovered in an apartment complex called DeGaulle Meadow. She identified photographs of her vehicle that depicted the damage to the steering column. She denied giving the defendant or anyone else permission to use her vehicle.
Detective John Duzac testified at trial that he took a taped statement from the defendant at the Fourth District substation. In that statement, the defendant admitted firing a gun at the police officer that was chasing him, but said that he | Kwas intoxicated on cocaine at the time. Detective Duzac denied that the defendant was threatened with arrest for any murders linked to the gun or that he was physically abused.
The State presented additional witnesses from the Crime Lab who testified to their investigation on the scene, seizure of bullets and casings from the scene, the testing of the firearm, and the testing of the white substance and liquid residue found in the syringe. Notably, Officer Kenneth Leary, an expert in firearms, tes- *550 tiffed that he tested a .45 caliber semiautomatic pistol and compared bullets fired from it to .45 caliber cartridges recovered from the scene. He established that the .45 caliber cartridges were fired from the weapon provided to him, State’s exhibit six. He also examined .40 caliber cartridges recovered from the scene. He determined that they were fired from two different Glock .40 caliber pistols. The Glock pistols were assigned to police officers.
The defendant testified on his own behalf. He stated that, on the day of the incident, he met up with Mark Johnson to go buy drugs. They got into a car that the defendant thought Johnson had “rented” in exchange for narcotics. They then picked up Antoche Wix. At some point, they came out of an apartment, and as they drove off, the defendant saw the police. The defendant testified that he ran because he had a gun in his pocket and did not want to go to jail. During the foot chase, he pulled the gun out of his pocket because it was falling out. The defendant said that his ears began ringing and he could not understand what Lt. Adams was telling him, but the defendant did hear a shot. After falling down, the defendant got back up and ran to the end of the building. Because he did not see any police officers, he decided to remove the magazine from the gun and throw down the gun. The defendant said his legs gave out, and he fell. He was then misapprehended. The defendant testified that, when he was transported to the Fourth District station, the police forced him to make a statement, which was written out, by threatening him with murder charges. He also claimed an unidentified officer squeezed his groin area to make him talk.
The defendant admitted that he is a heroin addict. He claimed that he injected cocaine on the day of the offense with his codefendants, but that was his first time using cocaine. He denied that the gun he was carrying ever discharged. He also testified that the gun was in the car when he got in and he did not know whose weapon it was.
ERRORS PATENT
A review of the record reveals no errors patent.
DISCUSSION

ASSIGNMENT OF ERROR NUMBER 1

In his first assignment of error, the appellant contends that his guilty plea to the armed robbery charge is involuntary and invalid because the trial court did not properly inform him that his sentence of fifteen years would be served without the benefit of probation, parole, or suspension of sentence. He avers that he would not have pled guilty had he known that he would not have been parole eligible. The factual support for this claim is based solely on the fact that the waiver of rights form he executed showed that his sentence would be fifteen years to run concurrently with the counts for which he was convicted at trial, but did not mention the prohibition on parole eligibility. The appellant does not contend that he moved to withdraw his guilty plea or objected at sentencing on June 3, 2003 when the court imposed the sentence without benefits.
|7At the time counsel filed her brief, the full transcript of the proceedings held on June 3rd was not a part of the record. Because of the allegation in this assignment of error, this Court on its own motion ordered that the complete transcript of the proceedings be filed. That transcript includes the full colloquy of the defendant’s plea. The court addressed the defendant before the plea was entered and *551 informed him that the sentencing range for armed robbery was “from 10 to 99 years in the Department of Corrections with that sentencing [sic] being without benefit of probation, parole, or suspension of sentence; do you understand that?” The defendant answered that he understood the sentencing range. The court then explained to the defendant that it was the court’s understanding that a plea agreement had been reached with the State and that it was the court’s intention to sentence him to fifteen years in the Department of Corrections “with credit for time served without benefit of probation, parole or suspension of sentence.” The defendant acknowledged that this sentence was what he understood. The court then reviewed the defendant’s constitutional rights that he was waiving by pleading guilty. Finally the court asked the defendant “did anyone else make any promises to you in connection or exchange for this plea of guilty that are outside the terms and conditions of the plea bargain agreement or what you and I have just discussed in open court?” The defendant responded “No.” The court then accepted the plea.
Based upon this complete record, it is clear that the court did inform the defendant that, pursuant to the plea bargain, the sentence for armed robbery would be fifteen years without the benefit of probation, parole, or suspension of sentence. The defendant stated for the record that this was his understanding of the plea bargain and that no one had made any other promises to him. Thus, this assignment of error lacks merit.

J¿ASSIGNMENT OF ERROR NUMBER 2

In his second assignment of error, the appellant argues that his counsel was ineffective because she did not object at sentencing nor did she file a motion to reconsider sentence. In State v. Mims, 97-1500, pp. 44-45 (La.App. 4 Cir. 6/21/00), 769 So.2d 44, 72, this court discussed the standard to be used to evaluate an effective assistance of counsel claim:
Generally, the issue of ineffective assistance of counsel is more properly addressed in an application for post-conviction relief filed in the trial court, where a full evidentiary hearing can be conducted. State v. Smith, 97-2221, p. 14 (La.App. 4 Cir. 4/7/99), 734 So.2d 826, 834, writ denied, 99-1128 (La.10/1/99), 747 So.2d 1138. Only if the record discloses sufficient evidence to rule on the merits of the claim does the interest of judicial economy justify consideration of the issues on appeal. Id. Here, however, we believe the record is sufficient to address defendant’s claims, which are essentially evidentiary.
The defendant’s claim of ineffective assistance of counsel is to be assessed by the two-part test announced in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80. L.Ed.2d 674 (1984). See State v. Fuller, 454 So.2d 119 (La.1984). The defendant must show that his counsel’s performance was deficient and that this deficiency prejudiced him. The defendant must make both showings to prove counsel was so ineffective as to require reversal. State v. Sparrow, 612 So.2d 191, 199 (La.App. 4 Cir.1992). Counsel’s performance is not ineffective unless it can be shown that he or she made errors so serious that he or she was not functioning as the “counsel” guaranteed to the defendant by the 6th Amendment of the federal constitution. Strickland, supra, at 686, 104 S.Ct. 2064. That is, counsel’s deficient performance will only be considered to have prejudiced the defendant if the defendant shows that the errors were so serious that he was deprived of a fair trial. To *552 carry his burden, the defendant “must show that there is a reasonable probability that, but for counsel’s unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.” Id. at 693,104 S,.Ct. 2068.
|aSee also State v. Crawford, 2002-2048 (La.App. 4 Cir. 2/12/03), 848 So.2d 615, writ denied, 2003-1085 (La.3/12/04), 869 So.2d 815.
The appellant argues that his counsel should have objected at sentencing and filed a motion to reconsider sentence because the sentence he received for the charge of unauthorized use of a movable was the maximum that could be imposed, ten years, and the trial court gave no reason for imposing the maximum. He argues that he was only a passenger in the stolen vehicle, and the driver, Mark Johnson, received a suspended sentence despite being more culpable. Thus, according to the appellant, the trial court would haye reconsidered his ten-year sentence and given him a lesser sentence if his counsel had properly moved for reconsideration. Notably, however, the appellant does not argue that the fifteen-year sentence he received for the attempted manslaughter of Lt. Adams was excessive; the sentencing range for that offense was zero to twenty years, and thus he received a sentence of three-fourths the maximum. Considering that he also entered into a plea bargain for a fifteen-year sentence for the armed robbery count, the appellant will be required to serve fifteen years without parole without regard to the ten-year sentence imposed on the unauthorized use of a movable charge. Furthermore, the armed robbery charge is a designated crime of violence, which will limit the eligibility for good time pursuant to La. R.S. 15:571.3(C). Thus, even if the trial court had reduced the sentence on the unauthorized use of a movable charge, the defendant’s time in custody would not be affected.
Moreover, the parties reached a plea agreement wherein the armed robbery sentence would run concurrently with the charges for which the defendant was tried. When the trial court was reviewing the terms of the plea bargain with the defendant, the court specifically reviewed the sentences it intended to impose on |inall of the counts, including the unauthorized use of a movable charge, and that they would run concurrently. The defendant acknowledged that he understood that these sentences would be imposed to run concurrently as part of the plea bargain. Trial counsel very likely made a conscious decision not to object to the other sentences imposed because they in essence were part of the defendant’s plea bargain.
Finally, although the appellant argues that he was less culpable with regard to the unauthorized use of a movable charge, he fled the scene with the weapon; the other defendants did not. He discharged his weapon repeatedly at the uniformed police officer that was trying to apprehend him. At trial his excuse for running was that he did not want to go to jail for possessing the gun; however he apparently never contemplated leaving the gun in the vehicle and simply surrendering to the police after the vehicle became trapped. At trial he denied ever even firing his weapon. These actions support the determination that he was the prime participant in the armed robbery, refused to take responsibility for his crimes, and received a substantial benefit by the terms of the plea bargain, as well as from the jury’s responsive verdicts as to the attempted first degree murder charge.[3]
*553 Overall, the appellant has failed to show that his counsel’s conduct was deficient or that he was prejudiced by his counsel’s decision not to file a motion to reconsider sentence or object to the sentence imposed for unauthorized use of a movable. This assignment of error lacks merit.
^CONCLUSION
The appellant’s guilty plea to armed robbery, his convictions for attempted manslaughter and unauthorized use of a movable, and his sentences are affirmed.
AFFIRMED.

. Also charged on some of the counts were Mark Johnson and Antoche Wix. The defendants subsequently moved to sever, and the request was granted. Johnson and Wix later entered guilty pleas and are not parties to this appeal.

. Because the defendant was found not guilty on two of the counts on which he was tried, the recitation of facts as to those counts will be limited. As to the armed robbery count to which the defendant pled guilty, no facts are available beyond those mentioned by the defendant in his inculpatory statement that was redacted before being submitted to the jury. The complete statement is in the record at pages 146-54 and indicates that the three defendants drove up to a female pedestrian. The defendant demanded her purse and showed her a pistol at which time she threw her purse into the stolen car in which the defendants were riding. The defendants then drove off. Apparently the victim was able to describe the car, and that description led to the police apprehending the defendants.

. Both the codefendants in their statements placed the full blame for the armed robbery *553 on the defendant. Although they were both originally charged with armed robbery, they ultimately pled guilty to being accessories to armed robbery; they tendered pleas of guilty as charged to unauthorized use of a movable, accepting their guilt, and received suspended sentences.