756 So.2d 455 (2000)
STATE of Louisiana
v.
Mark C. FORTIER.
No. 99-KA-0244.
Court of Appeal of Louisiana, Fourth Circuit.
January 26, 2000.
*456 Menette W. Burns, Louisiana Appellate Project, Covington, Louisiana, Counsel for Defendant-Appellant.
Harry F. Connick, District Attorney of Orleans Parish, Charles E.F. Heuer, Assistant District Attorney, New Orleans, Louisiana, Counsel for State-Appellee.
Court composed of Judge WILLIAM H. BYRNES, III, Judge MOON LANDRIEU, Judge DENNIS R. BAGNERIS, Sr.
*457 BYRNES, Judge.
On August 14, 1998, defendant Mark C. Fortier was charged by bill of information with possession of cocaine, a violation of La. R.S. 40:967. He was arraigned on September 9, 1998, and pled not guilty. On October 15, 1998, a six-person jury found defendant guilty as charged; and on October 28, 1998, he was sentenced to forty months at hard labor. The State filed a multiple bill, and the court found defendant to be a third offender. The court then vacated defendant's original sentence and resentenced him to forty months at hard labor. Defendant filed a motion to reconsider sentence, on which the trial court has not ruled, and also a motion for appeal, which was granted.

STATEMENT OF FACTS:
At trial, Officer Randy Lewis testified that he and Agent Lenora Veal were patrolling on the night of July 22, 1998, when they saw defendant seated on a bicycle at the corner of Paul Morphy Street and Gentilly Boulevard. Defendant appeared to be showing something to another man. As the officers approached, the men looked up, saw the officers and split up. The other man started to walk away "at a real brisk pace." Defendantwho was wearing only a tee-shirt, shorts, socks and tennis shoesreached down toward one of his socks then began to ride away on his bicycle. Officer Lewis stopped both men and patted both of them down for weapons; he subsequently found a bag of marijuana in defendant's sock. The officer arrested defendant and advised him of his Miranda rights. At central lock-up, a bag of cocaine apparently fell from some part of defendant's clothing as he was being searched and was quickly found on the floor. Defendant admitted to possessing the marijuana, but he denied ownership of the cocaine, claiming that it must have been there prior to his entry of the room.

ERRORS PATENT:
A review of the record reveals one error patent, which will be discussed under Assignment of Error Three.

ASSIGNMENT OF ERROR ONE:
In his first assignment of error, defendant argues that his trial counsel was unconstitutionally ineffective because he failed to file a motion to suppress the evidence recovered from defendant.[1]
Generally, the issue of ineffective assistance of counsel is more properly addressed in an application for post-conviction relief filed in the trial court, where a full evidentiary hearing can be conducted. State v. Smith, 97-2221, p. 14 (La.App. 4 Cir. 4/7/99), 734 So.2d 826, 834, writ denied, 99-1128 (La.10/1/99), 747 So.2d 1138. Only if the record discloses sufficient evidence to rule on the merits of the claim does the interest of judicial economy justify consideration of the issues on appeal. Id. at 834-35.
The defendant's claim of ineffective assistance of counsel is to be assessed by the two-part test announced in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052 (1984). See State v. Fuller, 454 So.2d 119 (La.1984). The defendant must show that counsel's performance was deficient and that this deficiency prejudiced him. The defendant must make both showings to prove that counsel was so ineffective as to require reversal. State v. Sparrow, 612 So.2d 191, 199 (La.App. 4 Cir.1992). Counsel's performance is not ineffective unless it can be shown that he or she made errors so serious that he or she was not functioning as the "counsel" guaranteed to the defendant by the Sixth Amendment of the federal constitution. Strickland, supra, at 686, 104 S.Ct. at 2064. That is, counsel's deficient performance will only be considered to have prejudiced the defendant if the defendant shows that the errors were so serious that he was deprived *458 of a fair trial. To carry his burden, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 693, 104 S.Ct. at 2068.
In this case, the question is whether there is a reasonable probability that the trial court would have granted a motion to suppress the evidence. We must accordingly determine whether the evidence here was obtained by an unreasonable search and/or seizure.
The Fourth Amendment of the federal constitution and Article I, § 5 of the state constitution prohibit unreasonable searches and seizures. A warrantless search or seizure is unreasonable unless one of the narrow exceptions to the warrant requirement applies. Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); State v. Tatum, 466 So.2d 29 (La.1985). Two of the well-recognized exceptions to the warrant requirement are the "plain view" and "abandonment" exceptions, both of which appear applicable to recovery of the cocaine found on the floor near defendant at central lockup. However, under the "fruit of the poisonous tree" doctrine, the cocaine would be subject to suppression if the initial search of defendant, which resulted in his arrest, were found to be unconstitutional. State v. Shivers, 346 So.2d 657, 661 (La.1977); Wong Sun v. U.S., 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). We accordingly turn to defendant's initial encounter with the police.
In State v. Sneed, 95-2326, p. 3 (La.App. 4 Cir. 9/11/96), 680 So.2d 1237, 1238, writ denied, 96-2450 (La.3/7/97), 689 So.2d 1371, this court described the standard to support an investigatory stop:
An individual may be stopped and questioned by police if the officer has a reasonable suspicion that the person "is committing, has committed, or is about to commit an offense." La.Code Crim. Proc. Ann. art. 215.1. While "reasonable suspicion" is something less than the probable cause needed for an arrest, it must be based upon particular articulable facts and circumstances known to the officer at the time the individual is approached. State v. Smith, 94-1502, p. 4 (La.App. 4th Cir.1/19/95), 649 So.2d 1078, 1082. The officer's past experience, training and common sense may be considered in determining if the inferences drawn from the facts presented were reasonable. State v. Jackson, 26,138 (La.App.2nd Cir. 8/17/94), 641 So.2d 1081, 1084.
See also State v. Allen, 95-1754 (La.9/5/96), 682 So.2d 713. In addition, once reasonable suspicion is found, paragraph (B) of art. 215.1 provides:
When a law enforcement officer has stopped a person for questioning pursuant to this Article and reasonably suspects that he is in danger, he may frisk the outer clothing of such person for a dangerous weapon. If the law enforcement officer reasonably suspects the person possesses a dangerous weapon, he may search the person.
See also State v. Hunter, 375 So.2d 99 (La.1979). "The officer need not be absolutely certain that the person is armed, but the officer must be warranted in his belief that his safety or that of others is in danger." State v. Smith, 94-1502, p. 5 (La.App. 4 Cir. 1/19/95), 649 So.2d 1078, 1082. As noted by this court in State v. Denis, 96-0956, pp. 7-8. (La.App. 4 Cir. 3/19/97), 691 So.2d 1295, 1299, writ denied, 97-1006 (La.6/20/97), 695 So.2d 1352:
We recognize that the police have the right to ensure their own safety in an encounter with a suspected criminal. Under both our federal and state Constitutions, however, this right must be balanced against an individual citizen's right to be free from unreasonable searches. Although sometimes appearing to be a legal technicality, Article 215.1 B represents the legislature's attempt *459 to maintain that balance by allowing the officer, who has lawfully stopped an individual, to perform a pat-down for weapons, but only if he "reasonably suspects that he is in danger."
A police officer's duty to enforce and uphold the laws includes not only those statutes that define and prohibit criminal conduct, but also those which define and limit the government's intrusion into the lives of its citizens. Unless the plain language of Article 215.1 B is interpreted as authorizing an officer to frisk every pedestrian who is stopped pursuant to subsection A, the only way a court can determine if the officer reasonably suspected that he was in danger is to require him to express that suspicion, and explain upon what it is based. Eliminating the requirement for such articulation not only eviscerates this statute, but also opens the door for potential abuse by the rare officer who acts upon personal prejudices rather than actual observation and experience.
(Emphasis added.) This case presents close questions under both paragraphs (A) and (B) of La.C.Cr.P. art. 215.1. We must determine not only whether the officers had reasonable suspicion to stop defendant initially, but also whether their performance of a weapons frisk on defendant during the stop was supported by a reasonable suspicion that defendant was armed with a dangerous weapon.
In State v. Williams, 98-3059 (La.App. 4 Cir. 3/3/99), 729 So.2d 142, the officers were patrolling in an area known for drug trafficking. They observed the defendant and another man standing near a porch, and the defendant was reaching his hand toward the other man's open palm. The officer testified he could see there was some object in the defendant's hand, but he could not see what the object was. When the men noticed the officers, the other man ran and ultimately escaped. The officer testified the defendant looked around like he was going to run but realized he did not have time to escape.
At the suppression hearing, defense counsel cited State v. Benjamin, 96-2781 (La.App. 4 Cir. 11/26/97), 703 So.2d 192, for the proposition that the officers did not have reasonable suspicion to stop the defendant and his companion. In Benjamin, officers were on routine patrol when they encountered the defendant, who was walking down the street. As the officers pulled alongside the defendant, he grabbed at his waistband and began running. Believing the defendant was carrying a weapon or contraband, the officers chased and eventually captured the defendant and retrieved a gun, which he had abandoned during the chase. The trial court denied the defendant's motion to suppress the gun and a statement he made at his arrest, and this court reversed. This court first noted that the actions of the officers constituted an imminent stop, for which they needed reasonable suspicion; and this court further found reasonable suspicion was lacking. This court noted that the officers who chased the defendant did so only because he began running and had grabbed at his waistband. This court pointed out that the officers had no tip involving the defendant or any drug activity at that time, nor did they see any weapon or suspected drug activity on the defendant's part. Having found there was an imminent stop and that the officers did not have reasonable suspicion to support the stop, this court suppressed the evidence abandoned by the defendant.
However, the Supreme Court reversed this court's ruling. State v. Benjamin, 97-3065 (La.12/1/98), 722 So.2d 988. The Supreme Court found there was reasonable suspicion for stopping the defendant because he had fled at the sight of the officers, and it stated:
This Court has previously ruled that flight from police officers, alone, will not provide justification for a stop. State v. Belton, 441 So.2d 1195 (La.1983). This activity, however, is highly suspicious and, therefore, may be one of the factors leading to a finding of reasonable cause. *460 Belton, 441 So.2d at 1198. Given the highly suspicious nature of flight from a police officer, the amount of additional information required in order to provide officers a reasonable suspicion that an individual is engaged in criminal behavior is greatly lessened.
Benjamin, 97-3065, p. 3, 722 So.2d at 989.
Applying the Benjamin ruling to the facts of Williams, this court stated:
Here, the officers observed activity between the defendant and his companion which was consistent with a drug transaction but which by itself would not have given the officers reasonable suspicion to stop them. However, by the time the officers stopped the defendant, his companion had already fled. As per the Supreme Court's ruling in Benjamin, the officers had reasonable suspicion to stop the fleeing companion. We find that the combination of the companion's flight, the fact that the area was known for a high volume of narcotics activity, and the observance of activity consistent with a drug transaction gave the officers reasonable suspicion to stop and question the defendant.
Williams, p. 6, 729 So.2d at 145.
This case presents an even closer question than did Williams. However, given that defendant and the other man parted and attempted to move away upon seeing the police, only minimal articulable facts are required under Benjamin to support the stop under art. 215.1, subd. A. In this case, there was no testimony that the area was known for drug activity, and the police did not actually see anything in defendant's hand. However, the police did witness behavior consistent with a drug transaction (one person holding something for another's inspection) at nighttime; and defendant's motion toward his sock after he saw the police further bolstered the latter's suspicions. We find that these factors, coupled with the subjects' attempted flight, are sufficient under Benjamin to have supported the subsequent stop, as allowed by art. 215.1, subd. A.
We note specifically that defendant's interaction with the other man, and the flight of both upon seeing the police, distinguish this case from State v. Chark, 96-1667 (La.App. 3 Cir. 4/30/97), 693 So.2d 316. In Chark, police observed a man wearing dark clothing and leaning against a tree at 11:30 p.m. As the police approached him, he walked away from the tree and toward a bicycle. After being stopped, the man eventually opened his hand, revealing cocaine in plain view. The Third Circuit suppressed the cocaine, stating that the police lacked reasonable suspicion for the stop. However, Chark involved only a very limited form of flight and little more; accordingly, the stop in that case was not sufficient under Benjamin, supra. Here, however, the combination of flight, defendant's motion toward his sock, and the pre-flight observation of activity consistent with a drug sale constituted reasonable suspicion under art. 215.1, subd. A and Benjamin.
We next consider whether the weapons frisk of defendant was justified under art. 215.1, subd. B. As previously noted, an officer need not be certain that a subject is armed, but he must reasonably suspect that the subject is a potential threat to himself or others. Smith, supra. In other words, an officer may not automatically frisk every person that he stops under art. 215.1, subd. A, hoping to find contraband. Denis, supra; State v. Riley, 95-0664 (La.App. 4 Cir. 5/1/96), 673 So.2d 1279, writ denied, 96-1294 (La.11/1/96), 681 So.2d 1257. Rather, the officer must perceive articulable facts that create a reasonable suspicion of danger; if he does so, he may conduct a weapons frisk. If he "finds a dangerous weapon, he may take and keep it until the completion of the questioning, at which time he shall either return it, if lawfully possessed, or arrest such person." La.C.Cr.P. art. 215.1, subd. C. And if in the course of the frisk the officer "feels an object whose contour or mass makes its [unlawful] identity immediately *461 apparent," he may seize it because of "the same practical considerations that inhere in the plain view context." Minnesota v. Dickerson, 508 U.S. 366, 377, 113 S.Ct. 2130, 2137, 124 L.Ed.2d 334 (1993); State v. Anderson, 96-0810 (La.App. 4 Cir. 5/21/97), 696 So.2d 105. This is the "plain feel" exception to the warrant requirement.
In many instances, the appearance of drug dealing itself is an articulable fact that may support an art. 215.1, subd. B frisk. "We can take notice that drug traffickers and users have a violent lifestyle, which is exhibited by the criminal element who are generally armed due to the nature of their illicit business. Therefore, a police officer should be permitted to frisk a suspect following an investigatory stop (based on reasonable suspicion) relating to drug activities." State v. Curtis, 96-1408, pp. 9-10 (La.App. 4 Cir. 10/2/96), 681 So.2d 1287, 1292.
The question is close in this case, however, because defendant was lightly clothed, wearing a tee-shirt, shorts, socks and tennis shoes; and thus the probability of his having a concealed weapon was lower than if he had been wearing pants and/or a jacket. However, the police could not discount defendant's motion toward his sock, which could have concealed a small weapon such as a knife or mace cartridge. Also, although Officer Lewis testified that defendant's shorts lacked pockets, defendant testified that they did; and assuming defendant was correct, his pockets (or waistband) could also have concealed a weapon. In sum, because the police had reasonable suspicion of drug-related activity, because defendant motioned toward his sock and was not incapable of carrying a concealed weapon, and because the policy of protecting law enforcement officers from unreasonable risks is an important one, we hold that the officers' decision to frisk defendant was proper under art. 215.1, subd. B.
Our discussion of the officers' search of defendant does not end here, however. As stated above, an officer, who has only reasonable suspicion of criminal activity, may only recover concealed contraband from a person who is the subject of a weapons frisk under the "plain feel" exception to the warrant requirement, announced in Minnesota v. Dickerson, supra. This rule creates a potentially important distinction in this case. If, on the one hand, the officer felt the bag of marijuana in defendant's sock in the course of the weapons frisk and, due to his experience, recognized that the object was contraband, then the seizure of it would be lawful. But if, on the other hand, the officer simply stopped defendant, saw a bulge in his sock and removed the bag, then the plain feel exception would not apply because the bag was not discovered during a lawful weapons frisk, which is a necessary and lesser invasion of privacy.
At trial, Officer Lewis testified to his search of defendant as follows:
Q. After you stopped [defendant], did you ask him to do anything?
A. Yes, sir. I asked [him] to put his hands on the vehicle so that I could do a pat down for weapons. Because initially, as he attempted to pull off on the bicycle I observed him bending over towards his pants leg. I was unsure of what he was reaching for or if he was reaching for anything. Based on what I saw earlier, his action and the other subject's actions, I conducted a pat-down for weapons on both of them.
Q. Did you actually find anything on the defendant?
A. Yes, sir. I found a bag of marijuana in [his] sock.
The defendant testified similarly:
Q. Did the police officers find anything on you when they searched you?
A. They found marijuana on me, sir.
Q. Where was that located?
A. That was in my sock.

*462 Q. Did they take anything else off of you while they searched you at that time?
A. They tookafter conducting the search, I took my shoes and socks off, and that was it. He made me open my hands and checked my mouth.
These excerpts indicate that an actual weapons frisk did take place; and Officer Lewis would have searched defendant's sock, which was naturally the area of most concern, based on defendant's earlier action. Officer Lewis also testified to his membership in the "Safe Home Task Force," which is primarily concerned with narcotics and weapons violations. We can thus safely infer that, based on his training and experience, Officer Lewis could discern the contour and "feel" of marijuana; and it is highly likely that he did so in this instance, especially since the occurrence of a lawful weapons frisk has been established.
In sum, finding no clear invasion of defendant's privacy, we hold that the officers in this case properly stopped and frisked defendant and properly found marijuana on him, justifying his arrest. As stated earlier, we therefore hold that the subsequently discovered cocaine was also lawfully found. Because a motion to suppress filed by trial counsel would most likely have been denied, we find no prejudice to defendant from counsel's failure to file such a motion, even assuming that counsel's failure to file the motion constituted deficient performance.
This assignment of error is without merit.

ASSIGNMENT OF ERROR TWO:
Defendant next argues that the trial court erred in failing to give written reasons for finding him to be a multiple offender as required by La. R.S. 15:529.1(D)(3). The defendant concedes that no case has required a remand for written reasons, that this is a "technical matter," and that the lack of written reasons was "clearly harmless."
This assignment of error is without merit.

ASSIGNMENT OF ERROR THREE:
The defendant complains that the trial court did not rule on his motion to reconsider sentence. In the interest of maintaining a complete record, we will remand the case to the trial court for a ruling on defendant's motion.

ASSIGNMENT OF ERROR FOUR:
Finally, defendant complains that the trial court failed to advise him of the prescriptive period for filing any applications for post-conviction relief under La. C.Cr.P. art. 930.8. This article contains merely precatory language and does not bestow an enforceable right upon an individual defendant. State ex rel. Glover v. State, 93-2330, 94-2101, 94-2197, p. 21 (La.9/5/95), 660 So.2d 1189, 1201.
This assignment of error is without merit; however, in the interest of judicial economy, we note for defendant that art. 930.8 generally requires that applications for post-conviction relief be filed within three years of the finality of a conviction.
Because the trial court has not ruled on defendant's motion to reconsider sentence, we remand this case in order that a ruling may be made. Defendant's conviction and sentence are otherwise affirmed.
CONVICTION AND SENTENCE AFFIRMED; REMANDED FOR HEARING ON MOTION TO RECONSIDER SENTENCE.
LANDRIEU, J., DISSENTS.
LANDRIEU, J., DISSENTING.
I believe there was at least a reasonable probability that the trial court would have granted a motion to suppress the evidence; therefore, I find defendant's trial counsel was unconstitutionally ineffective for failing to make the motion.
The particular facts of this case do not support the majority's conclusion that Officer Lewis had either reasonable suspicion *463 to stop the defendant or a reasonable expectation of danger to justify the weapons frisk. There was no testimony that the area in which defendant was spotted was known for a high volume of narcotics activity. Nor was there testimony that either the defendant or his companion "fled" upon seeing the officers, only that the companion began walking away "briskly" and the defendant reached down toward his sock before beginning to ride away on his bicycle. In State v. Williams, 98-3059, at p. 6 (La.App. 4 Cir. 3/3/99), 729 So.2d 142, 145, this court noted that the observance of activity consistent with a drug transaction, by itself, would not have given the officers reasonable suspicion to stop and question the defendant.
Moreover, considering how lightly the defendant herein was dressedin shorts, a tee-shirt, socks and tennis shoesthe mere fact that he reached down toward his sock was not sufficient to give the Officer Lewis reasonable suspicion that the defendant was armed with a dangerous weapon.
Under the circumstances, I think it probable that the trial court would have found that the marijuana was illegally seized, making the cocaine "fruit of the poisonous tree." I would therefore reverse the conviction based on ineffective assistance of counsel. Accordingly, I respectfully dissent.
NOTES
[1] As stated above, defendant was tried only for possession of cocaine, as simple possession of marijuana is a misdemeanor. The State did introduce at trial both the cocaine and marijuana recovered from defendant, the latter over defendant's objection.