STATE OF LOUISIANA
v.
SABRINA DOWELL.
No. 2009-KA-0260.
Court of Appeals of Louisiana, Fourth Circuit.
September 9, 2009.
Not Designated for Publication
LEON A. CANNIZZARO, Jr., District Attorney, DONNA ANDRIEU, Assistant District Attorney/Chief of Appeals, Counsel for State of Louisiana.
SHERRY WATTERS, Louisiana Appellate Project, Counsel for Sabrina Dowell.
Court composed of Judge BAGNERIS, Sr., Judge KIRBY, Judge GORBATY.
Judge DAVID S. GORBATY.
Sabrina Dowell appeals her conviction and sentence as a fourth felony offender. For the following reasons, we affirm her conviction and one imposed sentence, but remand for a sentencing correction on the second sentence.

STATEMENT OF THE CASE:
Defendant Sabrina Dowell was charged by bill of information with distribution of cocaine, a violation of La. R.S. 40:967(A), and distribution of marijuana, a violation of La. R.S. 40:966(A).[1] The trial court denied Dowell's motion to suppress the evidence on June 20, 2008. On October 29, 2008, she was tried by a judge and found guilty as charged on both counts. Dowell was sentenced to five years at hard labor as to Count One, and five years at hard labor as to Count Two, both counts to run concurrently. The trial court subsequently adjudicated defendant a fourth-felony habitual offender, based on both of the instant convictions, and sentenced her to twenty years at hard labor as a fourthfelony habitual offender. Dowell filed a motion for appeal, which was granted.

FACTS:
New Orleans Police Department Officer Michael Pierce testified that on October 26, 2007 he and his partner, Officer Devin Joseph, were flagged down by a citizen who reported illegal narcotics activity occurring at Apartment 14 of the Tops Motel, located at 7418 Chef Menteur Highway. The officers subsequently arrested defendant and Ronald Joseph at that location. After receiving the citizen complaint, the officers gathered support units and proceeded to the motel. Officer Pierce testified that when they arrived, he and Officer Joseph pulled into the parking lot and backed into a parking spot. Dowell came out of Apartment 14. Ronald Joseph was standing next door. It was nighttime, but Officer Pierce testified the parking lot was well lit. The two officers were approximately twenty to thirty yards away and had a clear view of Apartment 14. As Dowell came out of the apartment she was staring hard at the van containing the two officers. She walked over and handed a small object to Ronald Joseph. Officer Pierce stated on cross-examination that Joseph put the object into his pocket and then handed Dowell an unknown amount of currency. He confirmed on cross-examination that, based on his experience, he believed he had just witnessed a drug transaction.
Dowell approached the van on Officer Pierce's side and gestured for him to roll down the window, which he did. She asked the officer who he was looking for. Officer Pierce replied: "Tasha." Officer Pierce said that before he could finish his sentence defendant began walking at an extremely fast pace back toward the apartment. He and his partner believed defendant had identified them as police. Officer Pierce described her as "real frantic, like she knew who we were." He testified on cross-examination that defendant appeared nervous. He said they decided to further their investigation at that point. The two officers notified their support units, moved their vehicle to within ten feet of the door of the apartments, and exited their vehicle. Officer Pierce stated that as Dowell began to go into Apartment 14, he observed her either drop or discard a plastic bag containing what appeared to be narcotics. He said on cross-examination that she dropped it right in front of the door. Defendant then entered Apartment 14 and locked the door. Ronald Joseph went into Apartment 12. Officer Pierce retrieved the bag and observed it to contain what appeared to be cocaine and marijuana. He testified at the motion to suppress hearing that his concern was that defendant entered the apartment to either destroy additional narcotics or possibly harm herself.
Officer Pierce stood outside the door for a split second, before another officer breached the doors of both Apartment 14 and Apartment 12. Officer Pierce entered Apartment 14 and observed Dowell coming from the bathroom. He said she was immediately placed under arrest for possession of cocaine and possession of marijuana, and was advised of her rights. Dowell was searched incidental to her arrest, and officers seized one hundred and sixty dollars in U.S. currency from what he recalled was her right pocket. Some sandwich bags were located on a nightstand in the apartment. Officer Pierce identified the contraband defendant discarded/dropped.
Officer Pierce testified on cross-examination that he and his partner were less than a mile from the motel when the concerned citizen flagged them down. At that time the officers were in a marked police unit. The citizen would not give the officers his/her name. Officer Pierce confirmed that when he and Officer Joseph went to the parking lot they were in an unmarked van, although they were wearing uniform polo shirts with a police emblem on the side. However, he said the van had extremely dark tinted windows and that it was nighttime. Officer Pierce replied in the negative when asked whether at any time he sought to obtain a search warrant. He recalled that the one hundred and sixty dollars recovered from defendant was folded together in half, "like a bifold." He said less than thirty seconds passed between defendant entering Apartment 14 and the officers' breach into it.
Office Pierce confirmed on cross-examination that, for the most part, the area in which the Tops Motel was located was a known narcotic area. He had never gotten a tip about the motel like the one he got from the concerned citizen in the instant case. The tip was specific to Apartment 14, but the tipster did not identify defendant. Officer Pierce said that he was not, based solely on the tip, able to go to a magistrate, and he did not seek an arrest warrant or search warrant.
Officer Devin Joseph's testimony tracked that of Officer Pierce in all important respects. However, Officer Joseph said nothing about observing defendant dropping or discarding anything. Officer Joseph entered Apartment 12 and arrested Ronald Joseph as he attempted to reach the bathroom. The officer found a plastic bag in Joseph's pants pocket containing what, based on his experience, he believed to be crack cocaine and marijuana. Officer Joseph testified that the concerned citizen stated that a female was selling illicit drugs out of Room 14 at the Tops Motel. When asked later whether the officers contacted a magistrate to get an arrest warrant and a search warrant after they received the tip from the concerned citizen, Officer Joseph stated that they did not have enough to get a search warrant at that time.
At the close of the State's case it introduced a number of exhibits, including State Exhibit 4, a copy of a crime lab report by John Palm evidencing that the rock-like substances and vegetable matter listed as evidence under Item Number J3212207 tested positive for cocaine and marijuana, respectively. The State also submitted that if John Palm were called to testify he would testify that he examined and tested the rock-like substances and vegetable matter listed as evidence under Item Number J3212207.
Bharti Solanki testified that she and her husband owned the Tops Motel. Solanki identified a registration card for Ronald Joseph for Apartment 12, reflecting that he checked in on October 24, 2007. She also identified a registration card for Dowell, reflecting that she checked in on October 25, 2007. Solanki recalled that police damaged the door to Apartment 14.
Zina Theophile testified that on October 26, 2007 she was living with Ronald Joseph. She paid for a room at the Tops Motel and helped Joseph check in on October 24. They checked into the room because Joseph needed a place to stay that was closer to his job with Metro Disposal, given that the couple had only one vehicle. She testified that Joseph telephoned her before midnight on October 26, 2007, using his motel neighbor's cellphone. That neighbor's name was Sabrina. She testified that she received another phone call about 30-45 minutes later from "Buckshot," the motel clerk from whom she rented the room. He told her Ronald had been arrested.

ERRORS PATENT:
A review of the record reveals one error patent. The trial court failed to sentence defendant as a habitual offender on both counts charged in the habitual offender bill of information, imposing only a single enhanced sentence. See State v. Shaw, 06-2467, p. 20 (La. 11/27/07), 969 So.2d 1233, 1245 (sentences from multiple convictions obtained on the same date may be enhanced under the Habitual Offender Law, La. R.S. 15:529.1); State v. Harvey, 08-0217, p. 4, n. 3 (La.App. 4 Cir. 5/13/09), ___ So.3d ___, 2009 WL 1332344 (noting that defendant convicted on same date of two drug offenses could be sentenced as a habitual offender on both convictions, citing Shaw, supra.). Accordingly, the case is remanded to the trial court to: (1) designate the conviction for which the sentence was enhanced in the original habitual offender sentencing; and (2) impose an enhanced sentence for the other conviction.[2]

ASSIGNMENT OF ERROR NO. 1:
In this first assignment of error Dowell argues that the trial court erred in denying her motion to suppress the evidence.
Warrantless searches and seizures fail to meet constitutional requisites unless they fall within one of the narrow exceptions to the warrant requirement. State v. Edwards, 97-1797, p. 11 (La. 7/2/99), 750 So.2d 893, 901. On trial of a motion to suppress, the State has the burden of proving the admissibility of all evidence seized without a warrant. La. C.Cr.P. art. 703(D); State v. Jones, 97-2217, p. 10 (La.App. 4 Cir. 2/24/99), 731 So.2d 389, 395. A trial court's ruling on a motion to suppress the evidence is entitled to great weight, because the court has the opportunity to observe the witnesses and weigh the credibility of their testimony. State v. Devore, 00-0201, p. 6 (La.App. 4 Cir. 12/13/00), 776 So.2d 597, 600-601; State v. Mims, 98-2572, p. 3 (La.App. 4 Cir. 9/22/99), 752 So.2d 192, 193-194. In reviewing a trial court's ruling on a motion to suppress, an appellate court is not limited to evidence adduced at the hearing on the motion to suppress; it may also consider any pertinent evidence given at trial of the case. State v. Nogess, 98-0670, p. 11 (La.App. 4 Cir. 3/3/99), 729 So.2d 132, 137, citing La. Const. art. 1, § 5.
La. C.Cr.P. art. 215.1 A codifies the U.S. Supreme Court's authorization of investigatory stops based on reasonable suspicion, as set forth in Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868 (1968), and states:
A law enforcement officer may stop a person in a public place whom he reasonably suspects is committing, has committed, or is about to commit an offense and may demand of him his name, address, and an explanation of his actions.
Reasonable suspicion to stop is something less than the probable cause required for an arrest, and the reviewing court must look to the facts and circumstances of each case to determine whether a detaining officer had sufficient facts within his knowledge to justify an infringement of the suspect's rights. State v. Jones, 99-0861, p. 10 (La.App. 4 Cir. 6/21/00), 769 So.2d 28, 36-37; State v. Littles, 98-2517, p. 3 (La.App. 4 Cir. 9/15/99), 742 So.2d 735, 737. Evidence derived from an unreasonable stop, i.e., seizure, will be excluded from trial. State v. Tyler, 98-1667, p 4 (La.App. 4 Cir. 11/24/99), 749 So.2d 767, 770; State v. Benjamin, 97-3065, p. 3 (La. 12/1/98), 722 So.2d 988, 989. In assessing the reasonableness of an investigatory stop, the court must balance the need for the stop against the invasion of privacy that it entails. State v. Carter, 99-0779, p. 6 (La.App. 4 Cir. 11/15/00), 773 So.2d 268, 274. The totality of the circumstances must be considered in determining whether reasonable suspicion exists. State v. Oliver, 99-1585, p. 4 (La.App. 4 Cir. 9/22/99), 752 So.2d 911, 914. The detaining officers must have knowledge of specific, articulable facts, which, if taken together with rational inferences from those facts, reasonably warrant the stop. State v. Dennis, 98-1016, p. 5 (La.App. 4 Cir. 9/22/99), 753 So.2d 296, 299. In reviewing the totality of the circumstances, the officer's past experience, training and common sense may be considered in determining if his inferences from the facts at hand were reasonable. State v. Hall, 99-2887, p. 4 (La.App. 4 Cir. 10/4/00), 775 So.2d 52, 57; State v. Cook, 99-0091, p. 6 (La.App. 4 Cir. 5/5/99), 733 So.2d 1227, 1231. Deference should be given to the experience of the officers who were present at the time of the incident. State v. Ratliff, 98-0094, p. 3 (La.App. 4 Cir. 5/19/99), 737 So.2d 252, 254.
Flight from police officers, alone, will not provide justification for a stop. State v. Benjamin, 97-3065, p. 3 (La.12/1/98), 722 So.2d 988, 989; State v. Sartain, 98-0378, pp. 17-18 (La.App. 12/1/99), 746 So.2d 837, 849. However, flight from police officers is highly suspicious and, therefore, may be one of the factors leading to a finding of reasonable suspicion to stop. State v. Fortier, 99-0244, p. 7 (La.App. 4 Cir. 1/26/00), 756 So.2d 455, 459-460, citing Benjamin. Given the highly suspicious nature of flight from a police officer, the amount of additional information required in order to provide officers reasonable suspicion that an individual is engaged in criminal behavior is greatly lessened. Benjamin, supra Fortier, supra.
When a citizen abandons property without any prior unlawful intrusion into a person's right to be free from governmental interference, that property may be lawfully seized. State v. Dobard, 01-2629, p. 4 (La. 6/21/02), 824 So.2d 1127, 1130; State v. Williams, 07-0700, p. 7 (La.App. 4 Cir. 2/13/08), 977 So.2d 1101, 1109.
In the instant case, Officers Pierce and Joseph observed Dowell hand Ronald Joseph a small object and him in turn hand paper currency to her. Officer Pierce confirmed during his trial testimony that he believed he had witnessed an illegal drug transaction. He later confirmed on cross-examination that for the most part the area in which the motel was located was a known narcotic area. Defendant then approached the officers and asked Officer Pierce for whom they were looking. During that brief exchange of words defendant apparently realized the two men were police officers. Officer Pierce had a police emblem on his shirt, and he testified that he believed Dowell recognized him and his partner as police officers. Officer Pierce testified at trial that defendant then left their vehicle and began walking at an extremely fast pace back toward her apartment. Officer Pierce described defendant as "real frantic, like she knew who we were." Officer Pierce testified that at that point they decided to further their investigation. The two officers notified their support units, moved their vehicle to within ten feet of the door of the apartments, and exited their vehicle. Officer Pierce stated that as defendant began to enter Apartment 14, he observed her either drop or discard a plastic bag containing what appeared to be narcotics.
It is clear that Officers Pierce and Joseph had reasonable suspicion that defendant had committed a crimedistribution of illegal drugsat the point they left their parking location and drove to the front of defendant's apartment/motel room, intending to conduct an investigatory stop of her. Before the officers could make a lawful investigatory stop of Dowell, she dropped or intentionally discarded a plastic bag and entered her apartment. The plastic bag was abandoned by defendant, and Officer Pierce lawfully retrieved it. He testified that it contained what appeared to be cocaine and marijuana.
"Probable cause to arrest exists when the facts and circumstances known to the officer, and of which he has reasonably trustworthy information, are sufficient to justify a man of ordinary caution in believing the person to be arrested has committed an offense." State v. Lala, 08-0484, p. 7 (La.App. 4 Cir. 12/3/08), 1 So.3d 606, 610, quoting State v. Parker, 06-0053, p. 2 (La. 6/16/06), 931 So.2d 353, 355.
Officer Pierce retrieved the plastic bag discarded by defendant and determined that it appeared to contain cocaine and marijuana. This occurred after he had witnessed what appeared to be an illegal narcotics transaction between defendant, as the seller, and Ronald Joseph, as the purchaser. Thus, after retrieving the plastic bag containing cocaine and marijuana, Officer Pierce had probable cause to arrest Dowell.
The only physical evidence introduced against defendant besides the plastic bag containing cocaine and marijuana was one hundred and sixty dollars in U.S. paper currency, seized from defendant's pocket after her arrest, and some plastic sandwich bags located on a nightstand inside of defendant's apartment.
Defendant was only arrested after she retreated into her apartment behind a locked door. The officers did not have a search warrant to enter her apartment, but forcibly entered anyway.
In State v. Fournette, 08-0254 (La.App. 4 Cir. 7/2/08), 989 So.2d 199, writs denied, 08-1815, 08-1824 (La. 4/17/09), 6 So.3d 789, this Court set forth the applicable law regarding the warrantless entry by police into a protected area, as follows:
There is a justified intrusion of a protected area if there is probable cause to arrest and exigent circumstances. State v. Rudolph, 369 So.2d 1320, 1326 (La. 1979), cert. den., Rudolph v. Louisiana, 454 U.S. 1142, 102 S.Ct. 1001, 71 L.Ed.2d 294 (1982). Exigent circumstances are exceptional circumstances which, when coupled with probable cause, justify an entry into a "protected" area that, without those exceptional circumstances, would be unlawful. Examples of exigent circumstances have been found to be escape of the defendant, avoidance of a possible violent confrontation that could cause injury to the officers and the public, and the destruction of evidence. State v. Hathaway, 411 So.2d 1074, 1079 (La. 1982).
Fournette, 08-0254, p. 19, 989 So.2d at 211, quoting State v. Page, 95-2401, p. 10 (La.App. 4 Cir. 8/21/96), 680 So.2d 700, 709..
Officer Pierce testified at the June 20, 2008 motion to suppress hearing that his concern about defendant entering her apartment was that she entered the apartment to either destroy additional narcotics, or possibly harm herself. Considering all the facts and circumstances, it was reasonable for Officer Pierce to believe that defendant could destroy evidence before a search warrant could be secured for her apartment. Thus, Officer Pierce had probable cause to arrest defendant, and there were exigent circumstances present.
Therefore, Officer Pierce lawfully entered defendant's apartment without a search warrant and arrested her. The one hundred and sixty dollars in currency introduced in evidence was lawfully seized by Officer Pierce from defendant during a search incidental to her arrest. See State v. Warren, 05-2248, p. 14 (La.App. 4 Cir. 2/22/07), 949 So.2d 1215, 1226 ("After making an arrest, an officer has the right to much more thoroughly search a defendant ... for weapons or evidence incident to a valid arrest."). The plastic baggies seized by Officer Pierce in defendant's apartment without a search warrant were in plain view and thus were lawfully seized. See State v. Young, 08-0202, pp. 7-8 (La.App. 4 Cir. 10/29/08), 997 So.2d 718, 722 (evidence in "plain view" can be seized without a warrant if: (1) police have a prior justification for their intrusion into a protected area; (2) the evidence is discovered inadvertently; and (3) contraband character of evidence is immediately apparent, without close inspection).
The trial court properly denied defendant's motion to suppress the evidence.

ASSIGNMENT OF ERROR NO. 2:
In this assignment of error defendant argues that the evidence is insufficient to sustain defendant's convictions for distribution of cocaine and marijuana because the State failed to prove the elements of distribution, given that Ronald Joseph was charged with possession of cocaine and marijuana and was found not guilty.
This court set out the well-settled standard for reviewing convictions for sufficiency of the evidence in State v. Ragas, 98-0011 (La.App. 4 Cir. 7/28/99), 744 So.2d 99, as follows:
In evaluating whether evidence is constitutionally sufficient to support a conviction, an appellate court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Green, 588 So.2d 757 (La. App. 4 Cir.1991). However, the reviewing court may not disregard this duty simply because the record contains evidence that tends to support each fact necessary to constitute the crime. State v. Mussall, 523 So.2d 1305 (La. 1988). The reviewing court must consider the record as a whole since that is what a rational trier of fact would do. If rational triers of fact could disagree as to the interpretation of the evidence, the rational trier's view of all the evidence most favorable to the prosecution must be adopted. The fact finder's discretion will be impinged upon only to the extent necessary to guarantee the fundamental protection of due process of law. Mussall; Green; supra. "[A] reviewing court is not called upon to decide whether it believes the witnesses or whether the conviction is contrary to the weight of the evidence." State v. Smith, 600 So.2d 1319 (La.1992) at 1324.
In addition, when circumstantial evidence forms the basis of the conviction, such evidence must consist of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. State v. Shapiro, 431 So.2d 372 (La.1982). The elements must be proven such that every reasonable hypothesis of innocence is excluded. La. R.S. 15:438. This is not a separate test from Jackson v. Virginia, supra, but rather an evidentiary guideline to facilitate appellate review of whether a rational juror could have found a defendant guilty beyond a reasonable doubt. State v. Wright, 445 So.2d 1198 (La.1984). All evidence, direct and circumstantial, must meet the Jackson reasonable doubt standard. State v. Jacobs, 504 So.2d 817 (La.1987).
98-0011 at pp. 13-14, 744 So.2d at 106-107, quoting State v. Egana, 97-0318, pp. 5-6 (La.App. 4 Cir. 12/3/97), 703 So.2d 223, 227-228.
Defendant was convicted of distribution of both cocaine and marijuana, violations of La. R.S. 40:967(A) and La. R.S. 40:966(A), respectively.
To convict for distribution of a controlled dangerous substance, such as cocaine or marijuana, the State must prove: (1) "delivery" or "physical transfer;" (2) guilty knowledge of the controlled dangerous substance at the time of transfer; and (3) the exact identity of the controlled dangerous substance. State v. Thomas, 02-1561, 02-0809, p. 5 (La.App. 4 Cir. 2/19/03), 841 So.2d 45, 49; State v. Kanost, 99-1822, p. 4 (La.App. 4 Cir. 3/29/00), 759 So.2d 184, 187.
The evidence in the instant case is that the officers observed defendant transfer an unknown object to Ronald Joseph. Joseph put the object into his pocket and then transferred an unknown amount of currency to defendant. Officer Pierce testified that, based on his experience, he had observed an illegal narcotics transaction. When the officers moved in, defendant discarded cocaine and marijuana outside her door and fled into her apartment. Ronald Joseph fled into the apartment he had rented. Officer Pierce entered defendant's apartment and arrested her, finding one hundred and sixty dollars in currency on her person and plastic bags on a nightstand. He noted that she was walking from the direction of the bathroom when he first saw her inside of the apartment. When Officer Joseph entered Ronald Joseph's apartment he said Ronald Joseph was headed toward the bathroom. Officer Joseph arrested him and found a plastic bag in his pants pocket containing what the officer believed to be cocaine and marijuana. Officer Joseph testified that he "found the object that [Ronald Joseph] retrieved from [defendant] was still in [Ronald Joseph's] pants' pocket ...." The State introduced the evidence seized from defendant and Ronald Joseph and the crime lab report evidencing positive test results for cocaine and marijuana.
Viewing all the direct and circumstantial evidence in a light most favorable to the prosecution, any rational trier of fact could have found all the essential elements of the offenses of distribution of cocaine and distribution of marijuana present beyond a reasonable doubt, and found defendant guilty beyond a reasonable doubt of those offenses.
That defendant's co-defendant Ronald Joseph was found not guilty of possession of cocaine and marijuana he had in his pants pocket, and which the facts suggest were sold to him by defendant, does not render the evidence against defendant insufficient. Defendant cites no authority for such a proposition.
There is no merit to this assignment of error.

ASSIGNMENT OF ERROR NO. 3:
In this assignment of error defendant argues that the trial court erred in finding her to be a fourth-felony habitual offender because the evidence failed to establish that ten years had not elapsed from and/or between each of her prior convictions. Counsel for defendant argued this issue at the habitual offender hearing.
La. R.S. 15:529.1C states:
The current offense shall not be counted as, respectively, a second, third, fourth, or higher offense if more than ten years have elapsed between the date of the commission of the current offense or offenses and the expiration of the maximum sentence or sentences of the previous conviction or convictions, or adjudication or adjudications of delinquency, or between the expiration of the maximum sentence or sentences of each preceding conviction or convictions or adjudication or adjudications of delinquency alleged in the multiple offender bill and the date of the commission of the following offense or offenses. In computing the intervals of time as provided herein, any period of servitude by a person in a penal institution, within or without the state, shall not be included in the computation of any of said ten-year periods between the expiration of the maximum sentence or sentences and the next succeeding offense or offenses.
Defendant concedes that two of the prior convictions alleged in the habitual offender bill of information, for possession of cocaine on September 13, 2004 and for possession of cocaine on January 13, 2003, occurred within ten years of the instant conviction. Defendant argues, however, that the first of the three prior convictions alleged in the habitual offender bill of information, a conviction from January 9, 1990 for possession with intent to distribute cocaine, did not fall within ten years from either the arrest in the instant case or the next oldest conviction, from January 13, 2003. Defendant argues that the State's failure to prove the sentence and release date for the 1990 conviction required that the trial court find defendant no more than a third-felony habitual offender.
Generally, the State has the burden of proving that the ten-year period in La. R.S. 15:529.1 has not expired. State v. Collins, 01-1459, p. 27 (La.App. 4 Cir. 8/21/02), 826 So.2d 598, 615-616. The date of actual discharge from supervision of the Department of Corrections determines the expiration of the previous sentence. Collins, 01-1459, p. 27, 826 So.2d at 615; State v. Lorio, 94-2591, p. 4 (La.App. 4 Cir. 9/28/95), 662 So.2d 128, 130. While on probation, a person is still under the supervision of the State and is therefore in custody. State v. Tropez, 546 So.2d 1376, 1379 (La. App. 4 Cir.1989). See also State v. Rousselle, 514 So.2d 577 (La.App. 4 Cir.1987)(prior conviction, for which defendant was still on probation, could be used to enhance defendant's sentence upon a subsequent felony conviction, as the period in La. R.S. 15:529.1C would not have begun to run until the defendant was discharged from supervision).
In the instant case, defendant's earliest conviction listed in the habitual offender bill of information was the result of a plea of guilty on January 9, 1990 to possession with intent to distribute cocaine. She was sentenced to eight years at hard labor, the sentence was suspended, and she was placed on five years active probation. On November 3, 1993, defendant's probation from that 1990 conviction was revoked, and she was sentenced to serve five years at hard labor. Defendant's next conviction listed in the habitual offender bill of information was the result of a guilty plea on January 13, 2003 to possession of cocaine. Thus, there was a thirteen-year gap between defendant's 1990 conviction and her 2003 conviction.
However, given that defendant was sentenced to five years active probation for her January 9, 1990 conviction, and obviously was still on probation for that offense when her probation was revoked on November 3, 1993, the gap between defendant's known supervision under the Department of Corrections on November 3, 1993 and her second conviction, on January 13, 2003, is clearly less than ten years. Accordingly, defendant's first conviction, from 1990, links up with her second conviction, from 2003, and the trial court properly found defendant a fourth-felony habitual offender.
There is no merit to this assignment of error.

ASSIGNMENT OF ERROR NO. 4:
In this assignment of error defendant argues that her sentence is unconstitutionally excessive.
Defendant was sentenced as a fourth-felony habitual offender to twenty years at hard labor pursuant to La. R.S. 15:529.1(A)(1)(c)(i), which provides for sentencing to a determinate term not less than the longest prescribed for a first conviction, but in no event less than twenty years and not more than her natural life.
Even though a sentence under the Habitual Offender Law is the minimum provided by that statute, the sentence may still be unconstitutionally excessive if it makes no measurable contribution to acceptable goals of punishment, or is nothing more than the purposeful imposition of pain and suffering and is grossly out of proportion to the severity of the crime. State v. Johnson, 97-1906, pp. 6-7 (La. 3/4/98), 709 So.2d 672, 677; State v. Dorthey, 623 So.2d 1276, 1280-81 (La. 1993). However, the entire Habitual Offender Law has been held constitutional, and, thus, the minimum sentences it imposes upon habitual offenders are also presumed to be constitutional. Johnson, 97-1906 at pp. 5-6, 709 So.2d at 675; see also State v. Young, 94-1636, p. 5 (La.App. 4 Cir. 10/26/95), 663 So.2d 525, 527. There must be substantial evidence to rebut the presumption of constitutionality. State v. Francis, 96-2389, p. 7 (La.App. 4 Cir. 4/15/98), 715 So.2d 457, 461. To rebut the presumption that the mandatory minimum sentence is constitutional, the defendant must show by clear and convincing evidence that he is exceptional, which in this context means that because of unusual circumstances he is a victim of the legislature's failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case. State v. Lindsey, 99-3256, 99-3302, p. 5 (La. 10/17/00), 770 So.2d 339, 343; Johnson, 97-1906 at p. 8, 709 So.2d at 677. "Departures downward from the minimum sentence under the Habitual Offender Law should occur only in rare situations." Johnson, 97-1906 at p. 9, 709 So.2d at 677.
Defendant argues that she is a drug addict whose cocaine use goes back nearly nineteen years. Defendant was thirty years old on the date of her sentencing as a fourth-felony habitual offender on February 13, 2009. She was convicted in the instant case of distribution of marijuana and distribution of cocaine. Her three prior convictions charged in the habitual offender bill of information were the results of three guilty pleas: in September 2004 to possession of cocaine; in January 2003 to possession of cocaine; and in January 1990 to possession with intent to distribute crack cocaine.
Defendant points to two decisions in which she claims this Court "found the sentence for drug addicts excessive under similar circumstances," State v. Burns, 97-1553 (La.App. 4 Cir. 11/10/98), 723 So.2d 1013 and State v. Stevenson, 99-2824 (La.App. 4 Cir. 3/15/00), 757 So.2d 872. However, neither Burns nor Stevenson involved similar circumstances, especially given that the two sentences this Court found excessive were mandatory minimum life sentences, not a minimum twenty-year sentence as in the instant case.
In Burns, supra, the twenty-five-year-old defendant was sentenced to a mandatory life term as a fourth-felony habitual offender pursuant to now amended La. R.S. 15:529.1(A)(1)(c)(ii), where the defendant was convicted of possession with the intent to distribute two rocks of crack cocaine and distribution of one rock of crack cocaine, and had two prior felony convictions for possession of cocaine and one for possession of a stolen motor vehicle. The defendant admitted he was addicted to cocaine, and this Court stated that it assumed the defendant sold drugs to support his habit and was not a hardened and violent criminal. This Court noted that the defendant had the support of his father, who testified that the defendant was well-liked in the community and would go out of his way to help others. This Court also noted that the defendant previously had suffered a gunshot wound to his head which adversely affected his memory regarding time and place. This Court concluded that it could not say the defendant's sentence was not unconstitutionally excessive, and so it vacated the mandatory life sentence.
In Stevenson, supra, the thirty-eight-year-old female defendant was convicted of distribution of one rock of crack cocaine she obtained from another person, in the presence of an undercover police officer, and sold to that same undercover police officer. She was adjudicated a third-felony habitual offender pursuant to now amended La. R.S. 15:529.1(A)(1)(b)(ii) and sentenced to the mandatory term of life imprisonment. This Court noted that, unlike in Burns, supra, the defendant in Stevenson did not testify and no one testified on her behalf. This Court noted, however, that the trial court had ordered the defendant to report to a substance abuse program, and it concluded that it was possible that the defendant was a drug addict like the defendant in Burns, supra, who sold the single rock of crack cocaine to support her own habit.
In State v. Bentley, 02-1564 (La.App. 4 Cir. 3/12/03), 844 So.2d 149, this Court affirmed a minimum twenty-year sentence imposed on a third-felony habitual offender pursuant to La. R.S. 15:529.1(A)(1)(b)(ii), where the sentencing range was from twenty to sixty years at hard labor. The defendant was charged with and convicted of possession with intent to distribute two rocks of crack cocainealthough the facts at trial showed that he actually sold the cocaine to an undercover officer. The defendant's two prior convictions were for possession of cocaine. This Court noted that the trial court stated that it had considered the sentencing guidelines and concluded that it was going to impose the minimum sentence it could under the law. This Court also noted that the defendant failed to present mitigating circumstances on his behalf at the habitual offender hearing, and that the twenty-year sentence, the statutory minimum, was far less than the maximum.
In State v. Gordon, 444 So.2d 1188 (La. 1984), cited by defendant, the defendant pleaded guilty to two counts of distribution of cocaine, stemming from two cocaine sales to undercover police officers, one involving one ounce, the other involving three ounces. The defendant also pleaded guilty to one count of criminal conspiracy to distribute cocaine. He was sentenced to serve twenty years at hard labor on one distribution count, five years at hard labor for the other one, and two years at hard labor on the conspiracy count, all sentences to be served concurrently. However, the sentences were suspended and the defendant was placed on five years active probation with the condition that he serve one year in the parish jail, refrain from associating with illicit drug users, and complete all levels of the Odyssey House drug rehabilitation program. In January 1982, traces of THC, the active ingredient in marijuana, were detected in the defendant's urine. Consequently, he was discharged from the Odyssey House program when he was two to four weeks away from completing all phases of it. The defendant's probation was revoked and he was ordered to serve the suspended sentences with credit for time served in the parish jail and the Odyssey House program.
On appeal, the defendant in Gordon argued that his twenty-year sentence was unconstitutionally excessive. Although the defendant had pleaded guilty, the Court noted that his plea bargain was primarily for a suspended sentence and drug rehabilitation, and thus that his claim of excessiveness was reviewable. The Louisiana Supreme Court noted that at a trial court bond reduction hearing, extensive evidence had been presented on the defendant's law abiding and productive life prior to his involvement with cocaine. The defendant graduated from college with a bachelor of science degree in business in 1971, served two years in the military, and in 1976 obtained a bachelor of science degree in nursing. The defendant did not begin using cocaine until he was twenty-seven years old, and he soon became addicted. He was asked to leave his employment as a respiratory therapist at a hospital due to absences caused by his cocaine use. In addition to the defendant's productive life prior to beginning use of cocaine at age twenty-seven, the court noted that the circumstances of the crime did not warrant the imposition of the stiff penalty. Thus, the Court found the trial court imposed an excessive sentence.
Defendant cites several other appellate court decisions regarding sentences, State v. Jones, 33-111 (La.App. 2 Cir. 3/1/00), 754 So.2d 392; State v. Daniels, 607 So.2d 620 (La.App. 2 Cir. 1992); State v. Davis, 563 So.2d 473 (La.App. 1 Cir. 1990). However, as with Gordon, none of these decisions involved defendants sentenced as habitual offenders.
None of the decisions cited by defendant is similar to her case, except that defendant obviously is a drug abuser like the defendants in those cases.
Considering the facts and circumstances, it cannot be said that defendant has established by clear and convincing evidence that she is exceptional, i.e., that because of unusual circumstances she is a victim of the legislature's failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case. It cannot be said that defendant's twenty-year minimum sentence makes no measurable contribution to acceptable goals of punishment, or is nothing more than the purposeful imposition of pain and suffering and is grossly out of proportion to the severity of the crime.
There is no merit to this assignment of error.

CONCLUSION:
For the foregoing reasons, we affirm defendant's convictions and the one sentence. We remand to the trial court to: (1) designate the conviction for which the sentence was enhanced in the original habitual offender proceeding; and (2) impose an enhanced sentence for the other conviction.
CONVICTIONS AND SENTENCE AFFIRMED; REMANDED
NOTES
[1] Defendant was jointly indicted with Ronald Joseph, who was charged with possession of cocaine and second offense possession of marijuana. The two were jointly tried, and Joseph was acquitted on both counts.
[2] In addition, the trial court failed to vacate the original sentences (the Habitual Offender Bill of Information charged both of the instant convictions) before sentencing defendant as a habitual offender. In State v. Wilson, 02-0776 (La.App. 4 Cir. 1/22/03), 839 So.2d 206, this court referred to the trial court's failure to vacate the original sentence before sentencing the defendant as a habitual offender as "a potential error patent." Wilson, 02-0776, p. 4, 839 So.2d at 210. This court noted that the failure was an oversight, that the court intended that the habitual offender sentence replace the original sentence, and that the defendant did not complain of the oversight. This court found the error did not affect any substantial rights of the defendant, and did nothing. The facts and circumstances of the instant case call for the same result.